**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DANIEL McDONALD,**

**CASE NO.: ________________**

**Plaintiff,**

**v.**

**FORM 10 GROUP, INC.**

**Defendant.**
____________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DANIEL McDONALD ("Plaintiff" or "Mr. McDonald"), by and through undersigned counsel, sues Defendant, FORM 10 GROUP, INC. ("Form 10" or "Defendant"), and alleges:

### I. NATURE OF THE ACTION

1. This is an action for religious discrimination and retaliation in employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Florida Civil Rights Act of 1992, §§ 760.01–760.11, Florida Statutes (the "FCRA").

2. Mr. McDonald is a practicing Roman Catholic. Form 10 hired him in August 2025 and promoted him three times in roughly six months,

ultimately to Director of Enterprise Operations. He was never disciplined, counseled, or placed on any performance plan. In early February 2026, a subordinate accused him of "pushing religion." Form 10 placed Mr. McDonald under a third-party investigation. When Mr. McDonald asked the Company's owner, Michael Banks ("Banks"), whether his being Catholic was a problem, Banks told him that he "hate[s] the Catholic Church" and "hate[s] Catholics." On Ash Wednesday, February 18, 2026, Mr. McDonald came to work with ashes on his forehead. Two days later, on February 20, 2026, Form 10 terminated him by telephone without giving any reason.

## II. JURISDICTION AND VENUE

3. This Court has original subject-matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).

4. This Court has supplemental jurisdiction over Plaintiff's FCRA claims under 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the Title VII claims and form part of the same case or controversy.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed in Hillsborough County, Florida, the employment

records relevant to those practices are maintained and administered there, Plaintiff would have continued to work there but for the unlawful practices, and Defendant resides and does business there.

6. Venue is proper in the Tampa Division under Local Rule 1.04 because the claims arose in Hillsborough County, Florida.

## III. PARTIES

7. Plaintiff, DANIEL McDONALD, is a natural person, sui juris, who at all material times resided in Hillsborough County, Florida. At all material times Plaintiff was an "employee" of Form 10 within the meaning of 42 U.S.C. § 2000e(f) and § 760.02, Florida Statutes.

8. Defendant, FORM 10 GROUP, INC., is a corporation authorized to do and doing business in the State of Florida, with its principal Florida office at 6204 Benjamin Road, Suite 200, Tampa, Florida 33634. Form 10 provides technology and field-service support to federal, state, and local government agencies at thousands of sites across the United States.

9. At all material times Form 10 employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and, upon information and belief, employed more than fifty employees. Form 10 is an "employer" within the

meaning of 42 U.S.C. § 2000e(b) and § 760.02(7), Florida Statutes, and is engaged in an industry affecting commerce.

10. At all material times Banks was an owner and founder of Form 10 and its chief executive, exercised authority over the hiring, supervision, discipline, and termination of Form 10's employees, including Plaintiff, and acted as an agent of Form 10 within the course and scope of that agency.

## IV. ADMINISTRATIVE PREREQUISITES AND CONDITIONS PRECEDENT

11. On August 25, 2026, Plaintiff filed a Charge of Discrimination, EEOC Charge No. 511-2026-04840, with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of religion and retaliation by Form 10.

12. The Charge was presented to both the EEOC and the Florida Commission on Human Relations ("FCHR"), and Plaintiff requested that it be filed with both agencies. Pursuant to § 760.11(1), Florida Statutes, and the worksharing agreement between the EEOC and the FCHR, the Charge was dual-filed with, and is deemed to have been filed with, the FCHR on August 25, 2026.

13. On August 29, 2026, the EEOC issued a Determination and Notice of Rights on the Charge, which Plaintiff received on the same date. A

true and correct copy of the Determination and Notice of Rights is attached as Exhibit A. This action is filed within ninety (90) days of Plaintiff's receipt of that notice.

14. The FCHR has not issued a determination of reasonable cause or of no reasonable cause on the Charge, and the Charge remains pending before the FCHR. The 180-day period for the FCHR to make a determination under § 760.11, Florida Statutes, runs from August 25, 2026.

15. Plaintiff has exhausted all administrative remedies and satisfied all conditions precedent to bringing his Title VII claims. As to his FCRA claims, all conditions precedent to suit have occurred, have been performed, or have been waived or excused, or will have been satisfied by the passage of time before this action is adjudicated, at which point Plaintiff is entitled to proceed under § 760.11(8), Florida Statutes, as if the FCHR had determined that reasonable cause exists. This action is commenced within the time permitted by § 760.11(5), Florida Statutes. To the extent the Court determines that any FCRA claim is premature, Plaintiff requests that the claim be abated or dismissed without prejudice and will seek leave to re-plead it upon the expiration of the 180-day period.

## V. FACTUAL ALLEGATIONS

### A. Mr. McDonald's Faith and His Record at Form 10

16. Mr. McDonald is a practicing Roman Catholic. He is an active member of his parish, St. Timothy Catholic Church in Lutz, Florida, and a member and board member of his local Knights of Columbus council. His religious beliefs are sincerely held and are central to his life.

17. Mr. McDonald served in the United States Army for approximately thirteen years and retired at the rank of captain.

18. In or about August 2025, Form 10 hired Mr. McDonald as its Infrastructure Program Manager.

19. Form 10 promoted Mr. McDonald to Operations Manager and gave him his own department. Within approximately six months of his hire, Form 10 promoted him again to Director of Enterprise Operations, reporting directly to the Vice President of Operations and serving as a member of the Company's executive leadership.

20. As Director of Enterprise Operations, Mr. McDonald was responsible for the operational backbone of the Company, including logistics, facilities and field nodes, the vehicle fleet, the repair depot, and the call center supporting more than 4,000 government service sites.

21. Form 10 had advised Mr. McDonald that his annual salary would be increased at his annual review in light of his position and responsibilities.

22. Throughout his employment, Mr. McDonald was never disciplined, counseled, warned, or placed on a performance improvement plan, and he received no negative performance evaluation.

23. Banks knew that Mr. McDonald was Catholic. Mr. McDonald spoke openly at work about his parish and his involvement with the Knights of Columbus. Banks, whose children attend Catholic school, met regularly with Mr. McDonald on near-daily walks with Banks's dog, which was how Banks conducted many of his meetings with his executives.

**B. The Religion Accusation and the Investigation**

24. In early February 2026, Mr. McDonald counseled a subordinate employee, Joe, regarding his poor work performance and advised him that continued deficiencies could result in a performance improvement plan. Joe's first-line supervisors had been unable to address his performance and conduct problems.

25. Before that counseling session, Mr. McDonald and his subordinate managers had reported to Form 10's Human Resources department and to ownership that Joe had been shouting at and throwing

objects at managers and posed a risk of violence in the workplace and had recommended that he be suspended. Form 10 took no action.

26. During the counseling session, Joe volunteered that personal problems were affecting his work and asked Mr. McDonald how he managed his own personal difficulties. Mr. McDonald told Joe that he would need to find support on his own time and kept the conversation focused on work.

27. Approximately two days later, Joe reported to Kelly Spindler, Form 10's Director of Human Resources, that Mr. McDonald was "pushing religion" on him and was "building an army."

28. Rather than dismiss an accusation that was, on its face, an attack on Mr. McDonald's religion by an employee he had just counseled, Form 10 and Banks retained a third-party investigator to investigate Mr. McDonald. The investigator interviewed Mr. McDonald, both of his subordinate managers, and every member of his department. Because employees were uncomfortable being interviewed on the premises, the interviews were conducted off-site.

29. The workplace changed immediately. The near-daily walks with Banks stopped. Banks instead took Mr. McDonald off the property to a coffee shop, something Banks had never done before, and informed him of Joe's

accusation and the investigation. Banks assured Mr. McDonald that his job was secure and that the investigation was a formality.

30. Mr. McDonald cooperated fully with the investigation and denied that he had pushed religion on Joe or anyone else. Form 10 never informed Mr. McDonald of the outcome of the investigation.

**C. Banks Declares That He "Hates Catholics"**

31. Between Joe's accusation and Ash Wednesday, while the investigation was ongoing, Mr. McDonald, concerned that his faith had become the subject of a Company investigation, asked Banks directly whether Banks had a problem with his being Catholic, noting that Banks's own children attended Catholic school.

32. Banks responded, in words or substance: "No. I hate the Catholic Church. I hate Catholics. I send my kids there just to get a good education."

33. Banks was the owner and chief executive of Form 10 and the person with ultimate authority over Mr. McDonald's employment. His statement was a direct expression of hostility toward Mr. McDonald's religion by the decision-maker who terminated him days later.

**D. Ash Wednesday and the Two Days That Followed**

34. On Wednesday, February 18, 2026, Ash Wednesday, Mr. McDonald attended Mass and came to work with ashes visibly marked on his

forehead, in observance of a central practice of the Catholic faith. He remained at work with the ashes visible throughout the day, and they were seen by Banks, Spindler, and Human Resources staff.



35. On Thursday, February 19, 2026, as Mr. McDonald opened his office door after a closed-door meeting with one of his subordinate supervisors that lasted approximately one hour, he unexpectedly found Jennifer, a junior recruiter in the Human Resources department reporting to Spindler, standing immediately outside his door. When Mr. McDonald asked her to give him a moment, she loudly announced across the open office, “There goes the troublemaker.”

36. Jennifer had no supervisory relationship to Mr. McDonald and no legitimate reason to comment on him. Her remark revealed that Human Resources staff were aware of and discussing the supposedly confidential investigation into the religion accusation, and that Mr. McDonald had been labeled a "troublemaker" within Human Resources on account of it.

37. After using the restroom, Mr. McDonald went to Jennifer's desk and asked what she needed. She told him she did not want to speak with him. Mr. McDonald then went directly to Spindler, Jennifer's supervisor, reported the remark, raised his concern that a junior Human Resources employee appeared to know about and be discussing a confidential investigation, and asked that the conduct be addressed. Spindler said she would handle it.

38. Instead, Spindler reported to Banks that she was offended by Mr. McDonald's approach and felt threatened. Banks summoned Mr. McDonald and told him that Spindler felt he had been disrespectful to her, her team, and her authority. Banks and Mr. McDonald then went to Spindler's office, where Spindler was upset and would not explain her position.

39. Banks then took Mr. McDonald away from the office to Banks's home. Banks told Mr. McDonald that he was doing "a lot of good work," that everything would be fine, and that Mr. McDonald should write an e-mail to

the executive team apologizing for the "misunderstanding" with Spindler and Jennifer so that the matter could be put to rest.

40. Fearing for his job, Mr. McDonald complied with Banks's request. Mr. McDonald sent an "open letter of apology," as Banks had directed, to Spindler, Jennifer, and the executive team through the Company's e-mail system. The e-mail apologized for any misunderstanding "regardless of fault," took responsibility, and asked for the opportunity to move forward.

41. Form 10's Chief Technology Officer responded on the morning of February 20, 2026, with a kind reply. Minutes later, Form 10 cut off Mr. McDonald's access to the Company's systems, and Mr. McDonald was terminated by telephone. No reason was given for the termination.

42. Mr. McDonald was terminated two days after he came to work with ashes on his forehead, within days of Banks's declaration that he hates Catholics, and within approximately three weeks of the religion accusation that prompted the investigation.

43. Form 10 has never articulated any legitimate, non-discriminatory reason for terminating Mr. McDonald. He had no disciplinary history and had been promoted three times in six months.

**E. Damages**

44. As a direct and proximate result of Defendant's conduct, Mr. McDonald was unemployed for approximately four months. He applied for but did not receive unemployment compensation. On or about June 22, 2026, he accepted a position with another employer for substantially less than his salary at Form 10 and far less than the compensation Form 10 had represented he would receive.

45. Mr. McDonald has suffered and continues to suffer lost wages, lost benefits, lost future earnings and earning capacity, and other pecuniary losses; emotional distress, mental anguish, humiliation, embarrassment, and loss of dignity; damage to his professional reputation; loss of enjoyment of life; and/or aggravation of a pre-existing condition.

46. Defendant's conduct was intentional, willful, malicious, and undertaken with reckless indifference to Mr. McDonald's federally and state-protected rights.

47. Plaintiff has retained the undersigned counsel and is obligated to pay a reasonable fee for their services.

## COUNT I

## RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2(a)

48. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 above as if fully set forth herein.

49. This is an action against Form 10 for religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

50. At all material times Form 10 was an employer within the meaning of 42 U.S.C. § 2000e(b), and Plaintiff was its employee within the meaning of 42 U.S.C. § 2000e(f).

51. Plaintiff is a member of a protected class by reason of his religion, Roman Catholicism. "Religion" under Title VII includes all aspects of religious observance and practice as well as belief. 42 U.S.C. § 2000e(j).

52. Plaintiff was qualified for his position. He was promoted three times in approximately six months, was responsible for the Company's core operations, and had no record of discipline or deficient performance.

53. Form 10 subjected Plaintiff to adverse employment actions because of his religion, including placing him under a third-party investigation on the basis of an accusation that he was "pushing religion," and terminating his employment on February 20, 2026.

54. Plaintiff's religion was a motivating factor in Form 10's decision to terminate him. Direct evidence of discriminatory animus exists in the form of Banks's statement, made during the investigation and days before the termination, that he "hate[s] the Catholic Church" and "hate[s] Catholics." Banks was the owner and chief executive of Form 10 and the ultimate decision-maker with respect to Plaintiff's employment.

55. The discriminatory motive is further evidenced by the timing of the termination, two days after Plaintiff's open observance of Ash Wednesday and within weeks of the religion-based accusation; by Form 10's failure to articulate any reason for the termination; and by Form 10's abrupt departure from its own prior assurances that Plaintiff's job was secure.

56. Form 10 acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a.

57. As a direct and proximate result of Form 10's unlawful conduct, Plaintiff has suffered the damages described above.

**WHEREFORE**, Plaintiff, DANIEL McDONALD, demands judgment against Defendant, FORM 10 GROUP, INC., for:

(a) a declaration that the acts and practices complained of herein violate Title VII of the Civil Rights Act of 1964, as amended;

(b) back pay, including lost wages, lost benefits, and lost raises and bonuses, with prejudgment interest;

(c) reinstatement to his former position, or, in lieu of reinstatement, front pay and benefits;

(d) compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, damage to reputation, loss of enjoyment of life, and/or aggravation of a pre-existing condition, and all other non-pecuniary and pecuniary losses;

(e) punitive damages pursuant to 42 U.S.C. § 1981a;

(f) reasonable attorneys' fees, expert fees, and costs of this action pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988;

(g) prejudgment and post-judgment interest as permitted by law; and

(h) such other and further relief as the Court deems just and proper.

**COUNT II**

**RETALIATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3(a)**

58. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 above as if fully set forth herein.

59. This is an action against Form 10 for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), which makes it unlawful for an employer to discriminate against an employee because he has opposed any practice made an unlawful employment practice by Title VII.

60. Plaintiff engaged in activity protected by Title VII, including the following:

(a) During the religion-based investigation, Plaintiff asked Banks directly whether Banks had a problem with Plaintiff being Catholic. Plaintiff made that inquiry in good faith, in the reasonable belief that he was being investigated and treated adversely because of his religion, and for the purpose of opposing and bringing to the attention of the Company's chief executive religious hostility in his workplace. Banks's answer, that he "hate[s] Catholics," confirmed that Plaintiff's belief was reasonable.

(b) On February 18, 2026, two days before his termination, Plaintiff came to work and remained at work with ashes on his forehead in open observance of Ash Wednesday, an exercise and outward expression of the very religious identity that Banks had just declared he hates and that had been made the subject of a Company investigation. Plaintiff's open religious observance, made in the face of known hostility from the Company's owner, constituted opposition to Form 10's discriminatory treatment of his religion.

(c) On February 19, 2026, Plaintiff reported to the Director of Human Resources that he had been publicly labeled a "troublemaker" by Human Resources staff on account of the religion-based investigation and that the confidentiality of that investigation had been breached and asked that the

conduct be addressed. Plaintiff also denied the religion accusation to the Company's investigator and to Banks.

61. Form 10 took materially adverse action against Plaintiff by, among other things, terminating his employment on February 20, 2026, and, before that, withdrawing the access and regular executive contact he had previously enjoyed and pressuring him to author a written apology.

62. There is a causal connection between Plaintiff's protected activity and the adverse actions. The decision-maker, Banks, had direct knowledge of each act of protected activity. The termination followed Plaintiff's Ash Wednesday observance by two days, his report to Human Resources by one day, and his inquiry to Banks by a matter of days. Form 10 gave no reason for the termination and had assured Plaintiff only days earlier that his job was secure.

63. Plaintiff's protected activity was the but-for cause of Form 10's decision to terminate him. Form 10 would not have terminated Plaintiff had he not engaged in the protected activity described above.

64. Form 10 acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a.

65. As a direct and proximate result of Form 10's unlawful retaliation, Plaintiff has suffered the damages described above.

**WHEREFORE**, Plaintiff, DANIEL McDONALD, demands judgment against Defendant, FORM 10 GROUP, INC., for:

(a) a declaration that the acts and practices complained of herein violate Title VII of the Civil Rights Act of 1964, as amended;

(b) back pay, including lost wages, lost benefits, and lost raises and bonuses, with prejudgment interest;

(c) reinstatement to his former position, or, in lieu of reinstatement, front pay and benefits;

(d) compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, damage to reputation, loss of enjoyment of life, and/or aggravation of a pre-existing condition, and all other non-pecuniary and pecuniary losses;

(e) punitive damages pursuant to 42 U.S.C. § 1981a;

(f) reasonable attorneys' fees, expert fees, and costs of this action pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988;

(g) prejudgment and post-judgment interest as permitted by law; and

(h) such other and further relief as the Court deems just and proper.

## COUNT III

## RELIGIOUS DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, § 760.10(1)(a), FLA. STAT.

66. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 above as if fully set forth herein.

67. This is an action against Form 10 for religious discrimination in violation of the FCRA, § 760.10(1)(a), Florida Statutes, which makes it an unlawful employment practice for an employer to discharge or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's religion.

68. At all material times Form 10 was an "employer" within the meaning of § 760.02(7), Florida Statutes.

69. Plaintiff is a member of a protected class by reason of his religion, Roman Catholicism, and was at all material times qualified for his position.

70. Defendant discriminated against Plaintiff because of his religion by subjecting him to a religion-based investigation and by terminating his employment on February 20, 2026, as more fully alleged above. Banks personally made or directed the decision to terminate Plaintiff, days after declaring that he hates Catholics.

71. Plaintiff's religion was a motivating factor in Defendant's decision to terminate him.

72. Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, entitling Plaintiff to punitive damages under § 760.11(5), Florida Statutes.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the damages described above.

**WHEREFORE**, Plaintiff, DANIEL McDONALD, demands judgment against Defendant, FORM 10 GROUP, INC., for:

(a) a declaration that the acts and practices complained of herein violate the Florida Civil Rights Act of 1992, § 760.10, Florida Statutes;

(b) back pay, including lost wages, lost benefits, and lost raises and bonuses, with prejudgment interest;

(c) reinstatement to his former position, or, in lieu of reinstatement, front pay and benefits;

(d) compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, damage to reputation, loss of enjoyment of life, and/or aggravation of a pre-existing condition, and all other non-pecuniary and pecuniary losses;

(e) punitive damages pursuant to § 760.11(5), Florida Statutes;

(f) reasonable attorneys' fees, expert fees, and costs of this action pursuant to § 760.11(5), Florida Statutes;

(g) prejudgment and post-judgment interest as permitted by law; and

(h) such other and further relief as the Court deems just and proper.

## COUNT IV

## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, § 760.10(7), FLA. STAT.

74. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 above as if fully set forth herein.

75. This is an action against Defendant for retaliation in violation of the FCRA, § 760.10(7), Florida Statutes, which makes it an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under the FCRA.

76. At all material times Defendant was an "employer" within the meaning of § 760.02(7), Florida Statutes.

77. Plaintiff engaged in activity protected by the FCRA, including his good-faith inquiry to Banks, during the religion-based investigation, whether Banks had a problem with Plaintiff's being Catholic; his open observance of Ash Wednesday on February 18, 2026, in the face of Banks's declared

hostility toward Catholics and the pending religion-based investigation; and his February 19, 2026 report to the Director of Human Resources that he had been labeled a "troublemaker" on account of that investigation and that its confidentiality had been breached, as more fully alleged in Count II above.

78. Defendant took materially adverse action against Plaintiff by terminating his employment on February 20, 2026, and by the other conduct alleged above. Banks personally made or directed the decision to terminate Plaintiff.

79. There is a causal connection between Plaintiff's protected activity and the adverse actions. Banks had direct knowledge of each act of protected activity, and the termination followed within two days of Plaintiff's Ash Wednesday observance and within one day of his report to Human Resources. Plaintiff's protected activity was the but-for cause of his termination.

80. Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, entitling Plaintiff to punitive damages under § 760.11(5), Florida Statutes.

81. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered the damages described above.

**WHEREFORE**, Plaintiff, DANIEL McDONALD, demands judgment against Defendant, FORM 10 GROUP, INC., for:

(a) a declaration that the acts and practices complained of herein violate the Florida Civil Rights Act of 1992, § 760.10, Florida Statutes;

(b) back pay, including lost wages, lost benefits, and lost raises and bonuses, with prejudgment interest;

(c) reinstatement to his former position, or, in lieu of reinstatement, front pay and benefits;

(d) compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, damage to reputation, loss of enjoyment of life, and/or aggravation of a pre-existing condition, and all other non-pecuniary and pecuniary losses;

(e) punitive damages pursuant to § 760.11(5), Florida Statutes;

(f) reasonable attorneys' fees, expert fees, and costs of this action pursuant to § 760.11(5), Florida Statutes;

(g) prejudgment and post-judgment interest as permitted by law; and

(h) such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable as of right.

Dated: September 24, 2026.

Respectfully submitted,

AVE MARIA LAW CENTER

/s/ Raymond Christopher
**Raymond Christopher, Esq.**
Florida Bar No.: 0103920
5706 Mayflower Way, Unit 207
Ave Maria, FL 34142
Phone: (855) 729-2474
E-mail:
raymond@avemarialawcenter.com
Attorney for Plaintiff